IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01828-SBP

MONZU, LLC,

    Plaintiff,

v.

MEOW WOLF, INC., and
MW Denver, LLC,

    Defendants.

---

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
AND SUPPORTING MEMORANDUM OF FACTS AND LAW**

---

In response to the Motion to Dismiss which was filed August 31, 2023, Plaintiff states as follows:

**PRELIMINARY STATEMENT**

1. Defendants' sole argument in their Motion to Dismiss is deceptively based on the omission of one important fact, to which they notably fail to call to the Court's attention: the final "Release Order," for about Seventy-Seven Percent (77%) of the total purchase of goods of the one-year contract, was placed **after** the contract ended. *See* Release Order dated February 1,

2023 attached as Exhibit A to the Motion to Dismiss. Also included in Exhibit A is the transmittal email also dated February 1, 2023. Document 10-1 pp. 1-2.[1]

2. Notably, in their Motion to Dismiss, (Document 10, pp. 1-2), Defendants cite the beginning date of the contract, February 8, 2022, but purposely fail to cite the end date of the contract, even though immediately thereafter Defendants cite to Paragraph 12 of the Complaint which states in its entirety:

> "As noted on the Contract under "Special Instructions," Meow Wolf stated that, "This PO represents the annual quantity we will order for a 12-month time frame February 2022 **through January 2023**."

3. Also notably in Defendants' Motion to Dismiss, (Document 10 p. 2), Defendants assert that, "Remarkably, the Complaint completely ignores Defendants' order for all the remaining goods under the parties' agreement." What is more remarkable is that Defendants fail to bring to the Court's attention that the "order for all the remaining goods, **77% of the entire contract**, was ordered a day late and more than a dollar short.

## FACTS

4. Filed simultaneously herewith is the Declaration of Isaac R. Olson, Sole Member of Plaintiff, (Document 16 p. 1 and Document 17 p. 1 para. 2). On June 30, 2022, Defendants sent an email to Mr. Olson which states in part, "**We will not put you in a position to make hundreds of cases with short notice.**" Declaration at paragraph 7 and Exhibit D attached thereto.

---

[1] Defendants are competently represented by two firms: a New York City law firm with more than a dozen attorneys, and a Denver law firm with more than 450 attorneys in 16 locations throughout the United States and in Mexico.

5. Meow Wolf was the sole drafter of the Contract, and refused to allow any changes Plaintiff suggested. Declaration at paragraph 3.

6. Early in the Contract period, Mr. Olson began having concerns that the contract quantity would not be fulfilled since the Meow Wolf orders were small. In response, Amy Arnold, Senior Buyer for Meow Wolf emailed Mr. Olson on March 28, 2022 and stated, "Aaron and I will meet regularly to make sure we are on track with ordering." Declaration at paragraph 5 and Exhibit B attached thereto.

7. On May 4, 2022, Ms. Arnold sent another email to Mr. Olson and copied an employee of Defendant MW Denver, LLC Beverage Manager, Aaron VanderBroeke. The email states in part, "You should have all received a bulk PO from myself. This is a BINDING contract and **quantity commitment** that we will order from you throughout 2022 – 2023… **We will be releasing orders from you on a regular basis**… **I will personally be keeping track of all orders to make sure we are in line/on track** and **will fulfill ordering ALL units from our bulk PO by the end of the year time frame**." Emphasis added. Declaration at paragraph 6 and Exhibit C attached thereto.

8. On June 30, 2022, Mr. VanderBroeke sent an email to Mr. Olson and copied Ms. Arnold. The email states in part that, "At the end of the day, we will adhere to the original PO… **We will not put you in a position to make hundreds of cases with short notice**." Emphasis added. Declaration at paragraph 7 and Exhibit D attached thereto.

9. On July 1, 2022, Mr. VanderBroeke sent another email to Mr. Olson which stated in part, "We will not make any adjustments to the original PO. This includes, **keeping the original projected quantities**." Emphasis added. Declaration at paragraph 8 and Exhibit E attached

3

thereto.

10. As clearly stated on the PO which Defendants solely drafted, the Contract ended "through January 2023", which meant January 31, 2023. The Release Order for 3831 cases of 5,000 cases, **about 77% of the entire PO**, was placed on February 1, 2023, after the Contract ended, the contract end date which Meow Wolf solely determined, and is therefore void. Emphasis added.

## LAW AND ARGUMENT

### *The Relevant Terms of the Contract are Clear and Unambiguous.*

The Colorado Supreme Court held in *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997) that, "It is axiomatic that in construing a document courts should not rewrite the provisions of an unambiguous document, but must enforce an unambiguous contract in accordance with the plain and ordinary meaning of its terms. *See Wota v. Blue Cross & Blue Shield of Colorado*, 831 P.2d 1307, 1309 (Colo. 1992); *Griffin v. United Bank of Denver*, 198 Colo. 239, 242, 599 P.2d 866, 868 (1979). In ascertaining whether certain provisions of an agreement are ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed. *See May v. United States*, 756 P.2d 362, 369 (Colo. 1988); *Radiology Prof'l Corp.*, 195 Colo. at 253, 577 P.2d at 750; *see also Heller v. Fire Ins. Exch.*, 800 P.2d 1006, 1009 (Colo. 1990) (stating where no ambiguity exists agreement will be enforced according to express provisions, giving words their plain and generally accepted meaning)."

The term of the contract period is clear and unambiguous: "This PO represents the annual quantity we will order for a 12-month time frame February 2022 through January 2023."

4

Complaint Exhibit A. Therefore, the contract ended on January 31, 2023, and an order placed on February 1, 2023 for 77% of all remaining goods is void and clearly placed in bad faith, particularly when there were numerable emails going back and forth between the parties regarding concerns about completion of the contract quantity. Declaration of Isaac R. Olson paragraphs 5 – 8. Additionally, Defendants' February 1, 2023 order constitutes an entirely new offer.

### *The Order placed on February 1, 2023 was placed in Bad Faith.*

Defendants knew of the terms of contract since they drafted it and signed it. When they placed the order they knew they were outside the contract period and placed it anyway. Even their attorneys attempted to hide the fact of the end date of the contract in their Motion to Dismiss stating that it was "remarkable" that the Complaint completely ignored the void order placed after the contract period. What is shocking is that they attempt to solely rely on the void order to dismiss a valid breach of contract and bad faith claim. And to attempt to have 77% of the goods manufactured and shipped after the contract had ended, for a one-year contract, is in bad faith on its face, particularly when Defendants informed Plaintiff that, "We will not put you in a position to make hundreds of cases with short notice." Declaration Isaac R. Olson paragraph 7; and June 30, 2022 email attached thereto as Exhibit D. Defendants are liable for breach of the implied covenant of good faith and fair dealing.

### *Response to Various Matters Raised in the Motion to Dismiss.*

Defendants cite *Quinn v. City of Evans Police Dep't, Civil Action*, No. 07-cv-02280-ZLW-MJW, 2009 U.S. Dist. LEXIS 64052 (D. Colo. July 24, 2009) to define the term

5

"repudiation." *Quinn* is a wrongful termination case regarding the recission of a settlement agreement and is inapplicable to the case at bar.

Defendants cite *Wellness Walk in Tubs, LLC v. Scripps Media, Inc*., 607 F. Supp. 3d 1167 (D. Colo. 2022) for the proposition that a claim for breach of the implied covenant of good faith and fair dealing should be dismissed where "plaintiff sought to impose additional condition that was not bargained for" is inapplicable since Plaintiff herein did not impose any additional conditions, and Defendants failed to cite a single specific additional condition that Plaintiff sought to impose that had not been bargained for.

### *Plaintiff has Stated a Claim for Breach of Contract.*

Plaintiff has clearly stated a claim for breach of contract: 1) it is undisputed that there was a contract between the parties; i.e., the PO repeatedly declared in Defendants' emails to Plaintiff that it is a binding contract; 2) Plaintiff properly and timely performed every order placed by Defendants, Declaration at paragraph 11; 3) Defendants failed to perform by failing to timely order the contractually agreed upon 5000 cases of product; and 4) Plaintiff was damaged when Defendants only ordered and paid for less than $30,000.00 instead of the $127,500.00 pursuant to the terms of the contract, Complaint at paragraphs 10 and 22. *See Doe v. Univ. of Denver*, 2022 COA 57, 516 P.3d 946, 953.

### *Plaintiff has Stated a Claim for Breach of Implied Covenant off Good Faith and Fair Dealing.*

"A breach of the implied covenant of good faith and fair dealing is one way that a party can breach a contract. *See City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006). The implied covenant of good faith and fair dealing applies to every contract in Colorado. *Cary v. United of Omaha Life Ins. Co*., 68 P.3d 462, 466 (Colo. 2003). The duty of good faith and fair dealing

6

applies "when the manner of performance under a specific contract term allows for discretion on the part of either party." *Parker*, 138 P.3d at 292 (*quoting Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)). "Whether a party acted in good faith is a question of fact which must be determined on a case by case basis." *Amoco Oil Co*., 908 P.2d at 499." *Doe v. Univ. of Denver*, 2022 COA 57, 516 P.3d 946, 953, 956. Thus, Defendants breached the contract **and** breached the implied covenant of good faith and fair dealing when it did not fulfill the terms of the contract by timely ordering the additional cases of product up to the agreed upon 5000 cases, and in bad faith placed almost the entirety of the order late in the game, so late that the game was already over. And the bad faith act of waiting until February 1, 2023 to place the order violated the very promise made by Defendants: "We will not put you in a position to make hundreds of cases with short notice." Declaration at paragraph 7 and Exhibit D attached thereto. And it was not hundreds of cases, it was **thousands**. Exhibit A to the Motion to Dismiss reflects orders of three different products: 2438 cases; 692 cases; and 701 cases, all of which totals 3831 cases out of a 5,000 case one year contract.

***The Court has Inherent Authority to Impose Sanctions.***

In *Herrera v. Santangelo Law Offices, P.C.*, 2022 COA 93, 520 P.3d 698, 705 the Colorado Court of Appeals stated that, it is a "well-settled principle that "[c]ourts have inherent authority to issue orders that are necessary for the performance of judicial functions." *People v. McGlotten*, 134 P.3d 487, 489 (Colo. App. 2005); *see Halaby, McCrea & Cross v. Hoffman*, 831 P.2d 902, 907 (Colo. 1992) ("The inherent powers which courts possess consist of all powers reasonably required to enable a court to efficiently perform its judicial functions, to protect its dignity, independence, and integrity, and to make its lawful actions effective."). Further, "A

7

court has the "inherent power" to assess attorney fees as a sanction "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).

This is a clear case for this Court, pursuant to its inherent power, "to assess attorney fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* The instant motion is solely based on the glaringly omitted material fact which Defendants failed and refused to discuss in their motion: the material fact that the last minute order was placed outside the ending date of the contract, and is therefore void. On its face, knowing that Plaintiff was a small business, the unduly burdensome order, (which Defendants assured Plaintiff they would not do), was knowingly designed to cause Plaintiff to fail in a futile attempt to cover up their own inability to keep up their end of the bargain. Defendants and their counsel should be jointly liable for all fees and costs incurred in responding to the instant motion.

## CONCLUSION

Based on the facts set forth, and the applicable law, Plaintiff moves this Honorable Court to deny the Motion to Dismiss and award Plaintiff its attorney fees incurred due to the bad faith filing which was based on the obvious omission of a material fact, and for all other relief to which Plaintiff is entitled.

Respectfully submitted,

/s/ Jeffrey A. Land
JEFFREY A. LAND (TN BPR# 15835)
5865 Ridgeway Center Pkwy., Ste. 300
Memphis, TN  38120

8

Phone: 901.335.7228
jeff@jefflandlaw.com
*Attorney for Plaintiff MONZU, LLC*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that the foregoing has been filed electronically on the date affixed to this pleading by the Court's electronic filing system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail and/or email. Parties may access this filing through the Court's electronic filing system.

/s/ Jeffrey A. Land
Jeffrey A. Land, Attorney at Law